IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| COLTON CLAXTON, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 6:14-cv-03385-MDH |
| KUM & GO, L.C. d/b/a KUM & GO, | ) ) ) |
| Defendant. | ) |

# ORDER

Before the Court is Plaintiff's "Unopposed Motion for Approval of Class Action Settlement and Award of Attorneys' Fees, Costs and Expenses, Incentive Award, and Suggestions in Support." (Doc. 44). Plaintiff informs the Court that, through mediation and other negotiation, the parties have reached a settlement agreement. The Settlement Agreement is filed as an exhibit to Plaintiff's motion. Plaintiff now moves the Court to conditionally certify a settlement only class, to appoint class counsel, to preliminarily approve the parties' settlement, to approve the proposed notice plan, and to set a fairness hearing.

The Court deferred ruling on Plaintiff's unopposed motion until such time as Plaintiff provided additional briefing on the issue of class certification under Federal Rule of Civil Procedure 23, as required by *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). Plaintiff provided such briefing and the Court held a hearing on Plaintiff's motion. Following the hearing, the parties filed a joint report addressing several concerns expressed by the Court. The matter is now ripe for review. Upon full and careful consideration, the Court hereby **GRANTS** Plaintiff's unopposed motion (Doc. 44).

## BACKGROUND

On July 23, 2014 an investigator from the Missouri Division of Weights and Measures responded to a complaint of regular unleaded and number two diesel fuel cross-contamination at Kum & Go store number 473 (ID# 1889) located at 620 North National, Springfield Missouri 65802. The investigator interviewed employees from Kum & Go and Broyles Petroleum Equipment, and his investigation turned up the following information. On July 17, 2014 at approximately 1:49 p.m., Kum & Go received a product delivery from Solar Transport including approximately 4,001 gallons of regular unleaded fuel and 4,004 gallons of undyed ultra low sulfur number two diesel fuel. At some point thereafter, Kum & Go began receiving complaints of cross contaminated fuel. Kum & Go contacted Broyles Petroleum Equipment and Solar Transport to pump out the tanks and flush out the product lines. During the process of removing the product from the diesel tank, the product level in the unleaded tank also began dropping. It was determined that an old 2" "siphon bar manifold" piping system existed between the regular unleaded and number two diesel fuel tanks. The siphon appears to have been "activated" when the regular unleaded tank was filled nearly to capacity, which allowed the unleaded product to migrate to the diesel tank creating a siphon effect; as the unleaded product level in the tank lowered, the siphon reversed and allowed the number two diesel and unleaded mixture to then migrate to the regular unleaded tank.

Discovery shows that suspected "cross-drops" occurred on one occasion in May of 2014 and on another occasion in July of 2014. During the incident in May, three consumers came forward with drivability issues/damages. During the July incident, there were approximately 326 purchases[1] of regular unleaded fuel between the time of the fuel drop and the shutdown of the

---

[1] In each case, Defendant received payment for the motor fuel that was marketed as purely unleaded. Plaintiff states this represented to the consumers that the unleaded fuel met Missouri's minimum motor fuel requirements.

tank, and 35 consumers came forward with drivability issues/damages. Following the July incident, Defendant's agents performed substantial remediation efforts including jack hammering up the tank apparatus to remove the siphon bar manifold. After the siphon bar manifold was removed, the cross contamination problem did not recur. Defendant provided an initial claims process that it advertised through local media outlets to provide reimbursement for consumers who suffered certain losses from the contaminated fuel.

Plaintiff Colton Claxton was one of the individuals who allegedly purchased contaminated fuel. He sued Kum & Go in the Circuit Court of Green County, Missouri on behalf of himself and all other similarly situated, alleging a variety of causes of action including: (1) violation of the MMPA, (2) breach of implied warranty of merchantability, (3) negligence, (4) strict products liability, (5) breach of the warranty of fitness for a particular purpose, and (6) breach of contract. Plaintiff alleges the unleaded fuel that he purchased from Kum & Go store number 473 on or around July 18, 2014 caused his truck to experience problems that required an engine replacement as well as catalytic converter and oxygen sensor replacement. The case was removed to federal court and, after filing various motions and conducting some discovery, the parties reached a proposed settlement.

The parties' Settlement Agreement proposes a settlement-only class. The settlement class is defined as:

> All individuals and entities that purchased, from May 1, 2014 through July 31, 2014 (the "Class Period"), fuel from Defendant's Kum & Go store number 473 that, because it contained a mixture of different fuel types, did not meet specifications for sale as advertised ("affected fuel"). Excluded from the proposed class are: (1) all individuals and entities who made claims for damages caused by affected fuel and were compensated on or before February 27, 2015 as a result of the Kum & Go Original Claim Procedure that pre-dates this settlement; (2) Defendant and its officers, directors, and employees, as well as employees of any of Defendant's subsidiaries, affiliates, successors or assignees, and the immediate family members of any of these persons; (3) counsel and members of

the immediate families of counsel for Plaintiff; and (4) any trial judge who may preside over this case and members of the judge's immediate family.[2]

Under the terms of the proposed Settlement Agreement, Colton Claxton is to be appointed settlement class representative, Craig Heidemann and Nathan Duncan are to be appointed settlement class counsel, and Creative Risk Solutions is to be approved as the claims administrator. The proposed Settlement Agreement provides that, in consideration for a full, complete, and final settlement of the litigation, including dismissal of the litigation with prejudice and release of the claims included therein, Defendant agrees to pay: (1) Plaintiff $14,145 for his actual damages and an incentive award, (2) each settlement class member in an amount equal to his/her actual damages supported by documentary evidence (i.e. cost of fuel, cost of repairs, cost of vehicle rental), (3) attorney fees in the amount of $45,119, (4) court costs not to exceed $2,000, and (5) mediator fees.

## ANALYSIS

### I. Conditional Certification of Settlement Only Class

When confronted with a request for settlement-only class certification, the reviewing court should give Rule 23's class certification requirements "undiluted, even heightened, attention[.]" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Although settlement is a relevant factor to consider, "[s]ettlement . . . does not inevitably signal that class-action certification should be granted more readily than it would be were the case to be litigated." *Id.* at 620 n. 16. In fact, due to special problems encountered with settlement only classes, "proposed settlement classes sometimes warrant more, not less, caution on the question of certification." *Id.* (citing the discussion in *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 626-35 (3d Cir. 1996)). With this standard in mind, the Court turns to Rule 23(a) and (b).

---

[2] This is the most recent class definition proposed by the parties. *See* Doc. 50.

## A. Rule 23(a) Requirements

Rule 23(a) requires a party seeking to maintain a class action to affirmatively demonstrate numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The moving party must do more than plead these requirements; he must be prepared to present evidentiary proof to show these requirements are, in fact, satisfied. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

1. **Numerosity**

Numerosity requires the plaintiff to show "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). In assessing numerosity, courts consider the number of class members as well as "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Hammer v. JP's Sw. Foods, L.L.C.*, 267 F.R.D. 284, 287 (W.D. Mo. 2010) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982)). Here, during the July incident alone, there were 326 purchases of regular unleaded fuel between the time of the fuel drop and the shutdown of the tank. Discovery revealed up to several hundred affected class members over the three month time period at issue in this litigation. Considering the number of class members, the size of each individual claim, and the inconvenience of trying these suits individually, the Court finds numerosity is satisfied.

2. **Commonality**

Commonality requires a plaintiff to show "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to

5

generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Class members' claims should depend on at least one "common contention" the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *See id.* A single common question is sufficient to satisfy Rule 23(a)(2). *Id.* at 2556. Here, there are multiple questions of law or fact common to the class – i.e. whether Defendant misrepresented the gasoline sold; whether the marketing/labeling of the gasoline was false, misleading, deceptive, or unfair; whether Defendant knew or should have known of the contamination prior to relevant time period; whether the sale of contaminated fuel constituted a breach of an express or implied warranty; etc. The Court finds commonality satisfied in this case.

## 3. Typicality

Typicality requires the plaintiff to show "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The class representatives "need not share identical interests with every class member, but only 'common objectives and legal and factual positions.'" *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013). The typicality requirement is "fairly easily met" and it is considered satisfied where "the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quoting *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982)). Here, Mr. Claxton seeks to represent a class of "individuals and entities that purchased . . . fuel from Defendant's Kum & Go store number 473 that, because it contained a mixture of different fuel types, did not meet specifications for sale as advertised[.]" Mr. Claxton purchased contaminated fuel from store number 473 during the relevant time period, his car was damaged, and he seeks

6

to recover the actual cost of his fuel and repairs, consequential damages, punitive damages, attorney fees, and costs. The Court finds Mr. Claxton's claims and defenses are typical of the claims and defenses of the class.

## 4. Adequacy of Representation

The final certification requirement under Rule 23(a) is adequacy of representation, which requires a plaintiff to show "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is a twofold requirement – "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Lane v. Lombardi*, No. 2:12-CV-4219-NKL, 2012 WL 5462932, at *3 (W.D. Mo. Nov. 8, 2012) (quoting *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978)). Here, it is apparent that Mr. Claxton's interests coincide with those of the other class members – i.e. an interest in determining whether Defendant acted in an unlawful manner by selling unleaded gasoline containing certain amounts of diesel fuel at store 473 during the relevant time period, an interest in receiving reimbursement for the allegedly adulterated gasoline and compensation for his injuries suffered therefrom, and an interest in deterring Defendant from such conduct in the future. Nothing demonstrates that Mr. Claxton or his attorneys will have a conflict-of-interest with other class members or that they will have difficulty prosecuting the action in a proper manner. The Court finds proposed class counsel – Craig Heidemann and Nathan Duncan of Douglas, Haun & Heidemann – are qualified, experienced, and generally able to conduct this litigation. They have vigorously and diligently prosecuted this action thus far and state they will continue to do so until final disposition. Accordingly, the adequacy of representation requirement is met.

7

### B. Rule 23(b) Requirements

In addition to the requirements under Rule 23(a), a party seeking to certify a class must also satisfy, through evidentiary proof, at least one provision of Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, Plaintiff seeks to certify the class under Rule 23(b)(3).[3] That provision allows certification for a class seeking damages so long as the judgment binds all class members except those who affirmatively opt-out of the class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Certification under Rule 23(b)(3) requires a Plaintiff to show: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

"The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778-80 (8th Cir. 2013). The predominance analysis under 23(b)(3) is considered "rigorous" and "even more demanding than [the analysis under] Rule 23(a)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In re Zurn Pex Plumbing Products Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011). In the present case, common questions of law and fact predominate. For example, all class members would present the same factual evidence at trial concerning Defendant's underground tank system, Defendant's acquisition of that tank system, the existence of mixed fuel, Defendant's remediation efforts, and

---

[3] Plaintiff's brief also cites Rule 23(b)(1)(A); however, Plaintiff's counsel clarified at the hearing that he intends to proceed under 23(b)(3) if possible and under 23(b)(1)(A) only if certification under 23(b)(3) is denied.

8

the contents of the signs/billboards on the premises of store number 473.[4] Such common facts and evidence are necessary to make a prima facie showing on class members' MMPA and negligence claims. While the extent of damages for each individual class member involves individual questions (i.e. cost of gasoline purchased, cost of repairs), those questions do not overwhelm questions common to the class, especially in light of the proposed terms of settlement that easily account for such individual questions. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("Thus, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."); *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). Therefore, predominance is satisfied.

**2. Superiority**

In determining whether a class action is a superior method of adjudication, courts consider the four factors stated in Rule 23(b)(3) – "(1) the class members' interest in individual control of case prosecution or defense; (2) the extent and nature of any litigation a class member may have already begun; (3) the desirability, or lack thereof, of concentrating the litigation of the claims in this forum; and (4) the potential difficulties in managing the class action. *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 489 (W.D. Mo. 2010). When confronted with a settlement only class, however, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, there is little incentive to individually control the prosecution because the range of damages varies from the cost of fuel to the cost of engine overhaul, and the settlement provides

---

[4] Individual questions may include whether a particular person purchased fuel, whether that person used the fuel for "personal, family, or household purposes," and whether that particular fuel actually contained a mixture of different fuel types. These issues, however, are largely cured by the class definition.

9

full reimbursement for each of these persons. Moreover, persons who had an incentive to manage their own prosecution likely would have filed claims prior to this point through the claims process or through the courts; no person in the proposed class, other than Mr. Claxton, has done so. Furthermore, it is desirable to concentrate litigation in this forum because the gas station at issue is in this district, the sales at issue took place in this district, and the settlement class members most likely reside in this district. A class action in this instance will avoid potential duplicative litigation and will save the parties time and legal costs to adjudicate common legal and factual issues. Therefore, a class action here is superior to other available methods for fairly and efficiently adjudicating the controversy.

## II. Preliminary Approval of Class Settlement

A district court may approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To make that determination, a district court must consider the following four factors: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, No. 13-3581, 2015 WL 2402355, at *4 (8th Cir. May 21, 2015). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

Here, the proposed settlement is fair, reasonable, and adequate. The settlement provides payment for 100% of the actual damages suffered by class members in addition to attorney fees,[5]

---

[5] The Court preliminarily finds the amount to be paid for attorney fees reasonable. The payment represents fees incurred to date in filing and prosecuting this action and in consummating the settlement. As detailed in Plaintiff's motion, counsel will receive a sum of $45,119, which correlates to $311.66 per hour or 91% of the Missouri average hourly wage. The ultimate hourly wage will be less than $311.66 when factoring in the time spent on this case since settlement and the time Plaintiff's attorney will spend on this case moving forward.

10

mediator fees, and $2,000 in taxable court costs. The only relief requested by Plaintiff and not provided for in the proposed Settlement Agreement is punitive damages. Under the MMPA, "[o]nly outrageous conduct stemming from an 'evil motive or reckless indifference' can give rise to an award of punitive damages." Mo. Rev. Stat. § 407.025.1; *Chong v. Parker*, 361 F.3d 455, 458 (8th Cir. 2004). A plaintiff must show the defendant's culpable mental state by clear and convincing evidence. *Werremeyer v. K.C. Auto Salvage Co.*, 134 S.W.3d 633, 635 (Mo. 2004). Here, Plaintiff's counsel reported that discovery so far has revealed insufficient evidence to show Defendant posted the allegedly deceptive or misleading advertisements with evil motive or reckless disregard for its consumers. Moreover, the facts do not suggest a culpable mental state greater than negligence in failing to investigate or correct the intermixing tanks, seeing as Defendant purchased the tanks from a prior vendor and some diesel fuel is acceptable in unleaded fuel. It is reasonable that the class would want to settle and receive immediate relief rather than wait and face a motion for summary judgment regarding punitive damages or uncertainty at trial on the issue of punitive damages.

In addition to the lack of evidence related to punitive damages, the Court notes Defendant denies liability on all counts, asserts multiple defenses,[6] and denies that class certification is proper. In light of the settlement terms providing near complete payout to class members, the deference to the attorneys in assessing their clients' claims/defenses,[7] the presumptive validity of class settlement agreements negotiated at arm's length, and the fact that "[t]he proposed

---

[6] Some of these defenses include: "Plaintiff attempts to hold Defendant liable for the sale of products complying with applicable weights and measures laws and regulations"; "The negligence, fault, or carelessness of other persons or entities for whose conduct Defendant is neither responsible nor liable, was the sole, intervening, or superseding cause of Plaintiff's alleged damages"; "Defendant acted reasonably and in good faith to comply with the law." Def.'s Answer 5-6.

[7] *See Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1148-49 (8th Cir. 1999) ("Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, '[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.'")

11

settlement is a product of extensive negotiation conducted over a period of several months and requiring the services of a mediator experienced in this sort of litigation[,]" the first factor favors approval of the proposed settlement because the merits vis-à-vis the settlement terms appear fair and reasonable.

Another factor weighing in favor of preliminary approval is the "complexity and expense of future litigation." Future litigation in this proposed class action is likely to involve a dispute concerning class certification, a second phase of discovery, expert analyses related to the allegedly contaminated fuel, administrative delays in collecting information and deposing class members, extensive dispositive motions, a lengthy trial, and appellate review. "The complexity and expense of class action litigation is well-recognized" and "various procedural and substantive defenses. . . , the expense of proving class members' claims, the certainty that resolution under [a] settlement will foreclose any subsequent appeals, and the fear that, unsettled, the 'ultimate resolution of the action . . . could well extend into the distant future,' all weigh in favor of the settlement's approval." *In re Zurn Pex Plumbing Products Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *7 (D. Minn. Feb. 27, 2013). Based on the foregoing and the likely complexity and expense of future litigation, the proposed settlement appears "fair, reasonable, and adequate."

The Court has little information on the remaining two factors. Plaintiff reports that "Defendant has resources to satisfy claims made against it." Nonetheless, the Court finds that particular factor is outweighed by the other factors discussed above as well as the un-likelihood that settlement class members will object to the proposed settlement given they will be receiving near complete payout with no risk. Therefore, the Court finds the proposed Settlement Agreement is preliminarily fair, reasonable, and accurate.

### III. Approval of Notice Plan

For Rule 23(b)(3) classes, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must inform class members of the nature of the action, the definition of the class, the class claims and issues, the class member's right to enter an appearance through an attorney, the class member's right to request exclusion from the class, and the binding effect of a class judgment. *Id.* Notification of a class action settlement must be directed "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).[8] "Valid notice of a settlement agreement 'may consist of a very general description' of settlement terms." *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013).

Here, the Court finds the proposed notice and notice plan comply with Rule 23(c)(2)(B) and (e)(1). The parties report they have no records of the individuals or entities that purchased fuel from the relevant store during the relevant time period.[9] The proposed notice plan provides two separate methods of notification – (1) posted notices at point-of-sale locations inside and outside of store number 473, and (2) published notices in the Springfield (Mo.) News-Leader to run twice within a seven-day period. Such notices are sufficient where, as here, there are no readily available records of class members' individual addresses. *See, e.g., In re Zurn Pex Plumbing Products Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *8 (D.

---

[8] CAFA settlements must also be filed with the appropriate state and federal official. 28 U.S.C. § 1715. Defendant filed a certificate of service indicating compliance with this request. Doc. 46.

[9] Defendant reports that it does not and cannot retain credit card records for such purchases. The only purchasers identifiable by Defendant are those purchasers who previously filed claims in the Kum & Go claims process, who are not included in the proposed settlement class. The Court asked about potential alternative methods to discover the identity of the fuel purchasers and Plaintiff stated the only other way to potentially identify class members is to watch video camera footage, record ascertainable license plate numbers, determine who those license plates belong to, and then send actual notice. The Court finds that such lengths would require more than "reasonable effort."

Minn. Feb. 27, 2013). The Court finds the proposed notice plan is the "best notice practicable" given the circumstances. Moreover, the proposed notice itself provides all necessary information concerning the settlement class and the proposed settlement terms. Therefore, the proposed notice plan and proposed notice are approved.

## IV. Fairness Hearing

The Court will conduct a Fairness Hearing prior to final approval of the proposed class settlement in order to provide the settlement class members the opportunity to object to the proposed settlement terms. Fed. R. Civ. P. 23(e)(2) & (5).

## DECISION

Based on the foregoing analysis, Plaintiff's unopposed motion (Doc. 44) is **GRANTED**. It is **HEREBY ORDERED** that:

1. Having determined that the proposed settlement class meets the requirements of Rule 23(a) and (b), the Court hereby grants conditional class certification of a Rule 23(b)(3) settlement class, defined as follows:

   > All individuals and entities that purchased, from May 1, 2014 through July 31, 2014 (the "Class Period"), fuel from Defendant's Kum & Go store number 473 that, because it contained a mixture of different fuel types, did not meet specifications for sale as advertised ("affected fuel"). Excluded from the proposed class are: (1) all individuals and entities who made claims for damages caused by affected fuel and were compensated on or before February 27, 2015 as a result of the Kum & Go Original Claim Procedure that pre-dates this settlement; (2) Defendant and its officers, directors, and employees, as well as employees of any of Defendant's subsidiaries, affiliates, successors or assignees, and the immediate family members of any of these persons; (3) counsel and members of the immediate families of counsel for Plaintiff; and (4) any trial judge who may preside over this case and members of the judge's immediate family.

   Colton Claxton is approved as class representative for the settlement class. Pursuant to Rule 23(g), Attorneys Craig R. Heidemann and Nathan A. Duncan from the law firm of Douglas, Haun & Heidemann, P.C., 111 West Broadway, P.O. Box 117, Bolivar,

14

Missouri 65613, are appointed as class counsel for the settlement class. Creative Risk Solutions is approved as Claims Administrator.

2. Having determined that the proposed Settlement Agreement appears "fair, reasonable, and adequate" under Rule 23(e)(2), the Court hereby grants preliminary approval of the proposed Settlement Agreement.

3. Having determined that the proposed notice plan[10] and notice comply with the requirements of Rule 23(c)(2)(B) and (e)(1), the Court hereby approves the same, provided that the parties amend the notice to comply with the changes made in the parties' post-hearing report, to describe the location of store number 473, and to comply with the following deadlines:

    a. The approved notices shall be posted/published on or before June 30, 2015.

    b. Settlement class members shall submit claims for reimbursement on or before September 30, 2015.

    c. The Claims Administrator shall inform all claimants of their individual approved payouts on or before October 30, 2015.

    d. Settlement class members must opt-out of the settlement class on or before November 18, 2015. A settlement class member who objects to his/her individual approved payout or who objects to the settlement terms generally must file a written objection with the Court and parties on or before November 18, 2015.

    e. The Fairness Hearing will take place on December 18, 2015.

4. The Court will conduct a Fairness Hearing concerning the proposed Settlement Agreement on December 18, 2015 at 10:00 a.m. at the United States District Court for the

---

[10] Although not addressed by the parties, the Court orders that the point-of-sale notices at store number 473 shall remain in place for at least thirty (30) days.

15

Case 6:14-cv-03385-MDH   Document 51   Filed 06/11/15   Page 15 of 16

Western District of Missouri, United States Courthouse, 222 North John Q. Hammons Parkway, Springfield, Missouri 65806 in Courtroom 1. Objections or other responses by class members to the proposed Settlement Agreement shall be mailed to the Clerk of the Court and to counsel and postmarked no later than November 18, 2015, as specified in the notice to class members.

**IT IS SO ORDERED:**

Date: June 11, 2015

                                               */s/ Douglas Harpool*
                                               **DOUGLAS HARPOOL**
                                               **UNITED STATES DISTRICT JUDGE**